**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.**

TIMOTHY HALE, on behalf of himself and all
others similarly situated,

    Plaintiff,

v.

NORTH BROWARD HOSPITAL DISTRICT
d/b/a BROWARD HEALTH,

    Defendant.
_____/

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant North Broward Hospital District d/b/a Broward Health ("Broward Health") hereby files this Notice of Removal of the action filed by Timothy Hale ("Plaintiff"), on behalf of himself and all others similarly situated, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000582, to the United States District Court for the Southern District of Florida.

**JURISDICTION AND VENUE**

This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

1

## THE ACTION & TIMELINESS OF REMOVAL

I. **Factual and procedural background**

On January 12, 2022, Plaintiff, on behalf of himself and all others similarly situated, filed a Class Action Complaint against Broward Health in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000582 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action. A true and correct copy of the Complaint in the State Court Action is attached as **Exhibit 1**.

On January 18, 2022, Plaintiff served Broward Health with copies of the Summons and Complaint via process server. True and correct copies of the Summons and Proofs of Service are attached as **Exhibit 2**. A copy of the docket in the State Court Action is attached as **Exhibit 3**. Pursuant to 28 U.S.C § 1446(a), all other process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice of Removal as **Exhibit 4**. The civil cover sheet is attached as **Exhibit 5**.

This removal is timely because Broward Health filed this removal within thirty days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within thirty days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (stating that the time period for removal begins when the defendant is served).

II. **CAFA jurisdiction**

This Court has original jurisdiction over this State Court Action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.

Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

Notably, the *same law firm* representing Plaintiff in this State Court Action filed a nearly *identical* putative class action complaint in the Southern District of Florida and alleged:

> [t]his Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class, including Plaintiff, have a different citizenship from Broward Health. . . .

*Walecki v. North Broward Hospital District*, Case No. 0:22-cv-60083-WPD (S.D. Fla. filed January 12, 2022) (consolidated with *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022))[1] (Walecki Compl., attached as **Exhibit 6**, ¶ 27).[2] *Esterly* is another putative class action filed and pending in the Southern District of Florida under CAFA with a nearly identical class definition. *Esterly* and *Walecki* were consolidated under Case

---

[1]   In total, there are currently nine filed class actions based on the same alleged data incident. *See Hunter v. North Broward Hospital District*, CACE-22-000372 (Fla. 17th Cir. Ct. filed January 7, 2022) (complaint attached as **Exhibit 7**); *Valencia & Joseph v. North Broward Hospital District*, CACE-22-000336 (Fla. 17th Cir. Ct. filed January 7, 2022) (complaint attached as **Exhibit 8**); *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022) (complaint attached as **Exhibit 9**); *Prizer & Sims v. North Broward Hospital District*, CACE-22-000537 (Fla. 17th Cir. Ct. filed January 11, 2022) (complaint attached as **Exhibit 10**); *Walecki*, Case No. 0:22-cv-60083-WPD (consolidated with *Esterly*, Case No. 0:22-cv-60055-WPD) (complaint attached as **Exhibit 6**); *Beck v. North Broward Hospital District*, CACE-22-000803 (Fla. 17th Cir. Ct. filed January 18, 2022) (complaint attached as **Exhibit 11**); *Levy & Leslie v. North Broward Hospital District*, CACE-22-000857 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 12**); *Caraganis et al. v. North Broward Hospital District*, CACE-22-000869 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 13**).

[2]   Notably, a district court may take judicial notice of public records and public court dockets. *See Aldar Tobacco Grp., LLC v. Am. Cigarette Co., Inc.*, No. 08-62018-CIV, 2017 WL 8794599, at *1 (S.D. Fla. Sept. 20, 2017) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("A court may take judicial notice of public records, including public court dockets.").

No. 22-cv-60055-WPD. *See Esterly*, Case No. 0:22-cv-60055-WPD [DE 10]. Case No. 22-cv-60083-WPD has been administratively closed. *Id.* In *Esterly*, the plaintiff similarly alleged:

> This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class have a different citizenship from Broward Health. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy.

(**Exhibit 9**, ¶ 7).

The claims asserted in *Walecki* are nearly identical to the state court claims asserted in this State Court Action and include counts for negligence, negligence *per se*, breach of contract, breach of implied contract, breach of confidence, unjust enrichment, and declaratory judgment. Additionally, the putative class definition and size in *Walecki* is substantively identical to this State Court Action, encompassing "[a]ll persons who reside in the United States whose Sensitive Information was compromised by the Data Breach" and comprises roughly 1.3 million individuals. (**Exhibit 6**, ¶¶ 87, 92).

Thus, as in *Walecki* and pursuant to 28 U.S.C. § 1332(d) and § 1441(a), this Court has subject matter jurisdiction over this State Court Action filed by Timothy Hale, on behalf of himself and all others similarly situated, pursuant to CAFA because: (i) this State Court Action is pleaded as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

    a.    *The action is pleaded as a class action.*

CAFA defines a "class action" as "any class action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State* statute or *rule of judicial procedure* authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis supplied).

Plaintiff brings the State Court Action as a "class action" and seeks class certification under Florida law pursuant to Rule 1.220, Florida Rules of Civil Procedure. (Compl., attached as **Exhibit 1**, ¶¶ 97–112). "Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, is based on Federal Rule of Civil Procedure 23," *see Concerned Class Members v. Sailfish Point, Inc.*, 704 So. 2d 200 (Fla. 4th DCA 1998), therefore, the first CAFA requirement is met. (Compl. ¶ 7) ("Plaintiff brings this class action lawsuit on behalf of those similarly situated . . . .").

    b.    *The putative class includes at least one hundred (100) members.*

Plaintiff defines the Class as "[a]ll individuals whose Private Information was compromised in the data breach first announced by Broward Health on January 1, 2022." (Compl. ¶ 98). Plaintiff asserts that "Defendant has identified *1.3 million patients and employees* whose Private Information may have been improperly accessed in the Data Breach . . . ." *Id.* ¶ 101 (emphasis supplied) (the roughly 1.3 million putative class members are hereinafter referred to as the "Class Member(s)"). Therefore, the number of Class Members clearly exceeds the statutorily required minimum of 100 members.

    c.    *Minimal diversity of citizenship exists.*

Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." As such, only one member of the putative class must be diverse for diversity of

5

citizenship to be satisfied under CAFA. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (internal citation omitted) ("Under CAFA, federal courts now have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)").

While Plaintiff alleges that he is a citizen of Florida, the putative class he seeks to represent is much broader, as it encompasses 1.3 million patients and employees that allegedly were impacted by the data incident. Approximately twenty-eight states (including state attorneys general and state agencies) have been placed on notice of the data incident based on residents of their respective states potentially affected by the data incident. *See* Declaration ¶ 7 (attached as **Exhibit 14**). Broward Health also sent written notice to individual addresses in all fifty states, the District of Columbia, and Puerto Rico as well as to international addresses. *Id.* In fact, Plaintiff cites to the Office of the Maine Attorney General's website, which identifies 473 Maine residents potentially affected. (Compl. ¶ 24 n.2). Additionally, in the *Walecki* action, which encompasses the nearly identical putative class, Walecki alleges she "is a natural person domiciled in the State of Virginia [and] [h]er permanent residence is located in the State of Virginia." (**Exhibit 6**, ¶ 13). Thus, as Walecki also falls within the class definition in this case, at least one of the Class Members is a non-Florida citizen.

Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). In practice, the nerve center is normally "the place where the corporation maintains its headquarters . . . ." *Id.*

6

at 93. "The public often (though not always) considers it the corporation's main place of business." *Id.* Broward Health is a special independent taxing district created pursuant to Florida Statutes for the purpose of establishing and operating the necessary health facilities for the preservation of the public health and well-being of the citizens of Broward County, Florida. Accordingly, pursuant to *Hertz*'s nerve center test, Broward Health's principal place of business is in Broward County, Florida, and its corporate headquarters are located at 1800 NW 49th Street, Suite 110, Fort Lauderdale, Florida 33309. (Compl. ¶ 15). Thus, Broward Health is a citizen of the State of Florida.

In sum, minimal diversity exists pursuant to CAFA because Defendant is a citizen of the State of Florida, and at least one of the 1.3 million Class Members is a citizen of a state other than Florida.

        d.      *The amount in controversy exceeds the CAFA threshold.*

As a preliminary matter, the amounts set forth in this Notice of Removal are solely for purpose of establishing that the *amount in controversy* exceeds the $5,000,000 threshold and are not intended to—and cannot be construed as—an admission that Plaintiff can state a claim, establish Article III standing, or is entitled to damages in any amount or not otherwise subject to the statutory caps under Section 768.28, Florida Statutes.[3] *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (internal citations omitted) ("What counts is the amount in controversy at the time of removal. It is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation . . . ."). Defendant denies liability, denies that Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

---

[3]     *See* "Impact of Sovereign Immunity" section discussed *infra* at 13–14.

Where a complaint does not specify the amount of damages sought, the removing defendant must demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted) ("When the plaintiff contests or the court questions the defendant's allegation, the defendant must prove by a preponderance of the evidence that the amount in controversy is sufficient."). "[A] defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis supplied). To determine whether the defendant has met its burden, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 925 (internal citation omitted).

Here, the Complaint states that the amount in controversy exceeds $30,000[4] but does not specify the total amount of damages sought. (Compl. ¶ 16). At approximately 1.3 million Class Members, the damages and relief sought by the Class Members need only average *$3.85* per Class Member to satisfy the $5,000,000 amount in controversy requirement. To put into context, Plaintiff cites to a report focusing on healthcare breaches that found that the average cost to resolve an identity theft-related incident came to about $20,000 per person. *Id.* ¶ 56. Further, Walecki alleges in her complaint, which arises out of the same underlying alleged data incident, that "[t]he amount in controversy exceeds $5 million exclusive of interest and costs." (**Exhibit 6**, ¶ 27). For this reason and those discussed below, the allegations in the Complaint make it more likely than not that the amount in controversy requirement under CAFA is satisfied.

---

[4] $30,000 is the current jurisdictional threshold for Florida circuit court jurisdiction. Fla. Stat. § 34.01(1)(c)(2); *see also* Fla. Stat. § 26.012(2)(a).

Under each count of the Complaint, Plaintiff and the Class Members seek similar types of damages. Generally speaking, Plaintiff "seeks remedies including, but not limited to, compensatory damages for identity theft, fraud, and time spent, reimbursement of out-of-pocket costs, adequate credit monitoring services funded by Defendant, and injunctive relief including improvements to Defendant's data security systems and practices to ensure it has reasonably sufficient security practices to safeguard patients' Private Information that remains in Defendant's custody to prevent incidents like the Data Breach from reoccurring in the future." (Compl. ¶ 9). Plaintiff alleges that as a result of Defendant's alleged failures to prevent the data incident, "Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering:"

> a. The compromise, publication, theft, and/or unauthorized use of their Private Information;
> b. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;
> c. Lost opportunity costs and *lost wages* associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;
> d. The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in its possession;
> e. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and
> f. Anxiety and distress resulting from the fear of misuse of their genetic medical information.

*Id.* ¶ 91 (emphasis supplied).

As one category of damages, Plaintiff and the Class Members seek lost wages. Plaintiff alleges he spent "a minimum of *30 hours* addressing the fraudulent activity . . . ." (Compl. ¶ 12) (emphasis supplied). He also alleges that "[h]e now spends on average a few hours a week dealing

9

with the repercussions because of this fraudulent activity and checking account statements for irregularities." *Id.* Even taking the minimum wage in Florida, multiplied by just thirty minutes of alleged lost wages due to "time expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach," the amount in controversy would exceed $5,000,000. Specifically, effective September 30, 2021, the Florida minimum wage became $10.00 per hour.[5] As the minimum wage in Florida is $10.00 an hour, compensation for *only thirty minutes* of time spent by each of the 1.3 million Class Members, on an individual or average basis, equals $6,500,000. For purposes of calculating the amount in controversy, the inference that the Class Members on average will spend thirty minutes is inherently rational and logical, particularly in view of the named Plaintiff's allegation that he spent "a minimum of *30 hours* addressing the fraudulent activity . . . ." (Compl. ¶ 12) (emphasis supplied).

In Count I for negligence, Plaintiff also alleges:

> Plaintiff and Class Members have suffered and will continue to suffer damages and injury including, but not limited to, (a) actual identity theft; (b) the loss of the opportunity of how their Private Information is used; (c) the compromise, publication, and/or theft of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (e) diminished value of the Private Information; (f) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (g) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (h) *future costs* in terms of time, effort, and money that will be expended to *prevent, detect, contest, and repair* the impact of the

---

[5] https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2021-minimum-wage/september-2021/florida-minimum-wage-september-2021-announcement.pdf?sfvrsn=c12151b0_4.

> Private Information compromised as a result of the Data Breach <u>for the remainder of the lives of Plaintiff and Class Members</u>.

*Id.* ¶ 130 (emphasis supplied); *see also id.* ¶¶ 91, 174. Specifically, Plaintiff and the Class Members seek future costs associated with the prevention and detection of the Private Information that was allegedly compromised, for the "remainder of the lives of Plaintiff and Class Members." To prevent and detect allegedly impacted Private Information, Equifax, LifeLock, and Experian are three identity-protection agencies that advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month for the first year.[6] Equifax and Experian also offer products that provide 3-Bureau credit monitoring with up to one million in identity theft insurance for approximately twenty dollars per month.[7] Plaintiff and Class Members are seeking monitoring for **the remainder of their lives**. Multiplying the cost of providing only one month of credit-monitoring services at $8.99, for example, by approximately 1.3 million Class Members, the amount in controversy for credit monitoring is $11,687,000.

---

[6]   The LifeLock Standard option paid monthly starts at $8.99 per month for the first year and renews at $11.99 per month. *See* https://www.lifelock.com/lp/sem/semidt-b-mbg-lsa?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:bng:en:e:br:ll&utm_source=bing&utm_medium=cpc&utm_campaign=304067836&adgroup=1297423769623682&utm_term=lifelock&matchtype=e&utm_content=81089046242792&network=o&device=c&adp=&testgroup=&gclid=baf3971fc74613643f1df6eff7b58005&gclsrc=3p.ds&msclkid=baf3971fc74613643f1df6eff7b58005.

[7]   The credit monitoring offered with Equifax is $4.95 for the first 30 days and then $19.95 per month. *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355. Experian CreditLock is free for the first 30 days and then $19.99 per month. *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606.

Plaintiff also asserts a claim for negligence *per se* and seeks "damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing 'freezes' and 'alerts' with credit reporting agencies, contacting their financial institutions, closing or modifying financial and medical accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover and detect." (Compl. ¶ 141). For the purpose of calculating the amount in controversy, the Court can logically infer that the monetary value of the average time spent on such matters, alone, would satisfy the amount in controversy requirement.

Further, in Count II for breach of contract, Plaintiff and Class Members seek damages for "lost value of their privacy; they did not get the benefit of their bargain with defendant; they lost the difference in the value of the secure health services Defendant promised and the insecure services received. . . ." *Id.* ¶ 152. Plaintiff and Class Members request "damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses." *Id.* ¶ 153. In Count IV for unjust enrichment, Plaintiff and Class Members allege that:

> Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to <u>refund the amounts that Plaintiff and Class Members overpaid for Defendants services</u>.

*Id.* ¶ 176 (emphasis supplied). Additionally, in Count V, Plaintiff asserts that "[a]s a direct and proximate result of Defendant's breach of their fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and <u>other economic and non-economic losses</u>." *Id.* ¶ 181 (emphasis supplied). In sum, Plaintiff and all of the Class

12

Members seek "compensatory, consequential, incidental, and statutory damages, restitution, disgorgement, in an amount to be determined at trial . . . ." While the Complaint, as expected, does not quantify these damages, when these alleged damages are added to the costs associated with just thirty minutes of lost wages for the entire class plus the cost of credit monitoring, the amount in controversy will further exceed CAFA's $5,000,000 threshold.

In addition to the damages discussed above, in Count VII, Plaintiff asserts a claim for injunctive and declaratory relief. The Eleventh Circuit has held that "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted). In other words, "the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Id.* (internal citation omitted). Here, Plaintiff seeks a declaration that "Defendant's existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and [] that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures . . . ." (Compl. ¶ 203). In part, Plaintiff requests that Defendant engage third-party security auditors and internal personnel to conduct security testing on a periodic basis. *Id.* Adding these costs to the costs associated with Plaintiff's claim for lost wages, credit monitoring, and other categories of damages, the total amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000.

## **IMPACT OF SOVEREIGN IMMUNITY**

Under well-settled Florida law, the state and its agencies or subdivisions are entitled to sovereign immunity. *See* Fla. Stat. § 768.28(1). Section 768.28(1) states:

> [i]n accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign

> immunity for liability for torts, but *only to the extent specified in this act*. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for *injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission* of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted *subject to the limitations specified in this act*. . . .

(emphasis supplied).

Here, North Broward Hospital District d/b/a Broward Health is a special independent taxing district created pursuant to Chapter 27438, Laws of Florida, Special Acts of 1951, as amended. Plaintiff is not seeking damages for the loss of property, personal injury, or death caused by the negligent or wrongful act or omission. Accordingly, Broward Health has not waived sovereign immunity and all of Plaintiff's claims on behalf of himself and the Class Members are barred.

Section 768.28(5)(a) also provides that "[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $200,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $300,000." Thus, even if Plaintiff's claims are not entirely barred, Plaintiff's recovery from Broward Health for his and the Class Members' tort claims is, subject to Section 768.28(5), capped at $300,000 for the aggregate of the class.[8]

---

[8] Broward Health preserves all defenses, including, without limitation, under Section 768.28, Florida Statutes, and that Plaintiff and Class Members lack Article III standing.

14

## **NOTICE**

As required by 28 U.S.C. 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and are filing a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

        Respectfully submitted,

/s/ *Peter R. Goldman*
Peter R. Goldman
Florida Bar No. 860565
Nina Welch
Florida Bar No. 118900
Danna Khawam
Florida Bar No. 1025114
Nelson Mulllins
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida 33394
Phone: (952)764-7060 / Fax: (954)761-8135
peter.goldman@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com

AND

Mark L. Krotoski
Phillip Wiese
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, California 94304
Phone: (650) 843-4000
mark.krotoski@morganlewis.com
phillip.wiese@morganlewis.com
*pro hac vice application forthcoming*

*Counsel for North Broward Hospital*
*District d/b/a Broward Health*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 17th, 2022 the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Peter R. Goldman*
Peter R. Goldman